**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **TAVION CARTER,** | * | |
| **Plaintiff,** | * | |
| **v.** | | **Case No.: GJH-20-2725** |
| | * | |
| **BOWIE STATE UNIVERSITY,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff Tavion Carter filed this lawsuit against Defendants Bowie State University ("BSU" or the "University"), the President of BSU, Dr. Aminta Hawkins Breaux, the former Vice President for Student Affairs, Dr. Artie Travis, the former Chancellor, Dr. Robert Caret, other unknown university employees and officials, and The State of Maryland alleging gender and sexual orientation discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* (Count 1), discrimination based on disability in violation of the Americans with Disabilities Act, 42 U.S.C § 12101, *et seq.* (Count 2), breach of contract (Count 3), breach of the covenant of good faith and fair dealing (Count 4), negligence (Count 5), violations of Maryland Declaration of Rights (Count 6), vicarious liability (Count 7), intentional infliction of emotional distress, (Count 8), fraudulent misrepresentation (Count 9), and retaliation (Count 10), all arising from Plaintiff's suspension from school and expulsion from University housing after marijuana was found in his University-owned residence. ECF No. 1. Pending before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction, Failure to State a

Claim and Improper Service, ECF No. 14.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendant's Motion to Dismiss, ECF No. 14, is granted.

## I.    BACKGROUND[2]

### A. The Parties

Plaintiff Tavion Carter is an African American male and a resident of Prince George's County, Maryland. ECF No. 1 ¶ 1.

Defendant Bowie State University ("BSU") is a Historically Black University in Prince George's County, Maryland, which receives federal funding and is a part of the University System of Maryland. *Id.* ¶ 2. At all times relevant, Defendant Dr. Aminta Hawkins Breaux was and is the President of Bowie State University, and Plaintiff is suing her in her official capacity, *Id.* ¶ 3, Defendant Dr. Artie Travis, who is being sued in both his personal and official capacity, was Vice President for Student Affairs at Bowie State University. *Id.* ¶ 4. Defendant Dr. Robert Caret, who is being sued in his official capacity, was Chancellor of the University System of Maryland, *id.* ¶ 6.[3] Defendant University System of Maryland ("USM") is a public higher education system that receives federal funding in the State of Maryland.[4] *Id.* ¶ 5. Plaintiff contends that all Defendants are "employed by and or agents for the State of Maryland, who is liable for their actions under the theory of Respondeat Superior." *Id* ¶ 7.

---

[1] Also pending before the Court is Plaintiff's Consent Motion for Extension of Time File Response/ Reply, ECF No. 19, which the Court now grants.

[2] Unless otherwise stated, the background facts are taken from Plaintiffs' Complaint, ECF No. 1, and are presumed to be true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[3] Drs. Breaux, Travis, and Caret are referred to herein as the "Individual Defendants."

[4] Defendants note, ECF No. 14-1 at 3 n.1, that the case caption of the Complaint lists "the State of Maryland" as a co-defendant, though the substance of Plaintiff's Complaint identifies the University System of Maryland as a Defendant. ECF No. 1. ¶ 5. This is a distinction without a difference as the University System of Maryland is an instrumentality of the State. *See* Md. Code Ann., Educ. §§ 12-102(a)(2) ("The University is an instrumentality of the State and a public corporation.").

### B.  Factual Background

Plaintiff Tavion Carter alleges that he had a very difficult upbringing. Having never met his father, Plaintiff has been responsible for himself since he was seventeen years old and moved to Maryland from Las Vegas, Nevada at age twenty after his mother was sent to prison and he was left homeless. *Id.* ¶ 14. Plaintiff contends that he dreamed of going to college and playing football, but that he faced various obstacles in his personal life, which left him afraid that he would not be able to achieve these dreams. *Id.* Despite having moved to Maryland to live with his other family members, Plaintiff found himself homeless again and moved to a shelter in the District of Columbia. *Id*. ¶ 15. It is around this time that Plaintiff contends that "he began to act on his true sexual orientation and live his life as a Gay male." *Id.* Sometime later, Plaintiff was eventually accepted and matriculated into Bowie State University at twenty-two years old. *Id.*

Plaintiff contends that he initially tried to commute from the homeless shelter in the District of Columbia to BSU, but since he did not have a car or any other form of reliable transportation, he faced challenges with his efforts to commute. *Id.* ¶ 16. Additionally, Plaintiff's living situation in the homeless shelter became "increasingly unstable and precarious" as Plaintiff "found that as a young homosexual male he was threatened with and subjected to sexual molestation" at the shelter where he resided. *Id.* "These factors combined to make it extremely difficult for Plaintiff to arrive at school on a reliable and consistent basis, to concentrate on his work when he arrived, and to participate in student activities." *Id.* Plaintiff alleges that he went to Dr. Travis, then Vice President for Student Affairs at BSU, and explained his situation and asked for help. *Id.* ¶ 17. Dr. Travis arranged to have Plaintiff receive emergency housing at the Christa McAuliffe Residential Community ("CMRC")—one of the University's on-campus housing facilities. *Id.*

After Plaintiff moved into University-sponsored housing, Plaintiff met and began his first serious romantic physical relationship with another male student who lived in the CMRC, and Plaintiff alleges that "[t]hey kept the existence of their relationship private due to the stigma attached to being an openly homosexual male on the campus of Bowie State University." *Id.* ¶ 18. Plaintiff contends that he fell in love with this student, and believed that those feelings were reciprocated, however after beginning a physical relationship with this student, Plaintiff discovered that the student had human immunodeficiency virus (HIV), and thereafter learned that the student had infected him with the disease. *Id.* Plaintiff notes that HIV is an incurable disease and can progress to acquired immune deficiency syndrome (AIDS). *Id.* This diagnosis "completely upended" Plaintiff's life, particularly with respect to his ability to walk on to the BSU football team as the University doctor informed Plaintiff, once he was diagnosed with HIV, that he could not join the team. *Id.* Further, after learning that he was infected by this student, Plaintiff and the student engaged in "several raucous arguments in the CMRC." *Id.* ¶ 19. Plaintiff approached Dr. Travis about this issue and, in doing so, revealed the truth of Plaintiff's romantic relationship with the student, and Dr. Travis informed Plaintiff that he and the student had to go to University-sponsored counseling. *Id.* Plaintiff contends he attended these sessions while the other student did not. *Id.*

With respect to Plaintiff's on-campus living situation, Plaintiff alleges that he shared his living space with three male roommates, each of whom had a private bedroom, though the four students shared the common areas including the kitchen, living room, and dining room. *Id.* ¶ 20. Plaintiff contends that on or about September 2017, when he returned to his room at the CMRC after being in class for more than three hours, Plaintiff learned that the Campus Police had "raided their living space due to a complaint that people were smoking marijuana there." *Id.*

4

"Upon information and belief, Campus Police found 2–6 people in his roommates' rooms smoking marijuana," and thereafter Campus Police searched the living space, including the bedrooms, and "found a quantity" of marijuana in the bedrooms of the other roommates. *Id.* Plaintiff contends that, upon information and belief, Campus Police only discovered "a miniscule amount of crumbled part of dry leaves," in Plaintiff's room, which Plaintiff contends was "much less than any amounts of any substances that were found in the rooms of the other roommates." *Id.* Plaintiff further contends that "[i]t is not clear whether the substance was measured, weighed or tested," but that Campus Police alleged that it was marijuana, "which apparently was alleged to be a prohibited substance on campus." *Id.* Plaintiff alleges that he was "not involved in the marijuana smoking," that he was "not found or alleged to have been smoking marijuana," that "there was no marijuana smoking occurring in his room and he was not even in the CMRC when the other people were found smoking marijuana in the living space." *Id.*

Plaintiff alleges that, upon information and belief, Dr. Travis "gave the order" to have Plaintiff immediately removed from the CMRC, and Plaintiff further contends that he was "made to leave immediately, and not even allowed to get his HIV medicine," which caused him tremendous mental, physical, and emotional distress. *Id.* ¶ 21. After this, Plaintiff had nowhere to go and found himself homeless again, and he was "subsequently admitted to the psychiatric ward of a local hospital." *Id.* After he was released, Plaintiff was, again, homeless. *Id.* Additionally, Plaintiff alleges that after the incident with his on-campus housing, he was suspended from BSU and remained suspended while he pursued the University appellate process. *Id.* ¶ 22. Plaintiff contends that "[a]ppealing and contesting the decision to suspend him from school and expel him from student housing is constitutionally protected behavior." *Id.* Plaintiff alleges that "none of the other roommates were put out of the CMRC, immediately or ever, as a result of this

incident," that "none of the other people involved in actually smoking the marijuana were put out of their student housing," and that "none of the other roommates or other students involved were suspended from school as a result of this incident." *Id.* ¶ 23. Moreover, Plaintiff contends that he was the "only student who lived in this CMRC room who was known to be homosexual," and "the only student who had HIV." *Id.* ¶ 24. And, upon information and belief, he is the only student who was removed from University housing "without even having the opportunity to gather important belongings such as life-saving medicine," and was the only student suspended as a result of the incident. *Id.*

Plaintiff alleges that the University treated him this way "because he is a Black, Gay male with HIV," and that "[n]one of the other students who were not known to BSU to be Black Gay males with HIV were treated this way." *Id.* ¶ 25. Moreover, Plaintiff contends that BSU was aware that he is a Black, Gay, male who is HIV positive because Plaintiff "confided his situation" to Dr. Travis and Dr. Travis' administrative assistant, Ann Valentine.[5] *Id.* ¶ 26. The unnamed "Campus Doctor," unnamed "campus counselor," and other unidentified employees and officials were "also aware that [Plaintiff] is a Black male who is Gay and HIV positive." *Id.* And Plaintiff contends that the knowledge and awareness of Dr. Travis and his assistant Ann Valentine, as well as the other unidentified "doctors, counselors and other BSU employees and officials," of Plaintiff's sexual orientation and disability status "can be imputed to all Defendants as a result of their actual knowledge and their relationship with each other, including the doctrine of Respondeat Superior." *Id.*

---

[5] Plaintiff further alleges that "any knowledge of Ann Valentine can be imputed and implied to be known and was actually known to Dr. Travis," as "Ms. Valentine relayed the details about Mr. Carter's situation that she knew to Dr. Travis." ECF No. 1 ¶ 26.

Plaintiff also contends that, as Vice President for Student Affairs, Dr. Travis "was aware of and connected with the Office of Equity Compliance," which Plaintiff describes as "BSU's mechanism for investigating and otherwise addressing violations of federal and state law with regard to discrimination in any from, including race, sex, sexual orientation and disability," but that Dr. Travis "never referred [Plaintiff] to the Office of Equity Compliance, nor initiated a Title 9, Title 7, or Americans with Disabilities Act complaint on his behalf or advised him that this remedy was available." *Id.* ¶ 27. He also contends that Dr. Travis "had a conflict of interest" because "he was the person who should have referred [Plaintiff] to the Office of Equity Compliance and or initiated or supervised an investigation into his treatment in this situation; yet he was also the person who gave the order to expel [Plaintiff] from Student Housing and suspend him from school without due process[.]" *Id.*

Plaintiff "did not prevail in the University appellate process," and although he was subsequently allowed to return to the University, he was not allowed to return to the CMRC or any other campus housing. *Id* ¶ 28. Plaintiff contends that he never recovered from the stress of the discrimination he experienced at BSU, and the violations of his rights, such that, when he finally returned to campus, "his grades plummeted," and he was "never able to turn it around." *Id.* ¶ 29. As a result of Defendants' violations, Plaintiff experienced "humiliation, emotional distress, tuition costs, interest on student loans, lost wages and other damages." *Id.* Finally, Plaintiff alleges that he asked BSU for documentation regarding his suspension from school and expulsion from student housing, but "BSU officials told him that they would not give him any documents without a request from a lawyer." *Id.* ¶ 30.

### C. Procedural Background

On September 21, 2020, Plaintiff filed the instant lawsuit, ECF No. 1. On September 29, 2020, a Summons was issued to Defendants, ECF No. 4, and on the following day, September 30, 2020, Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* (the "IFP Motion"), ECF No. 5. The Court granted the IFP Motion on January 14, 2021, ECF No. 6. BSU, the State, and the Individual Defendants state that they were not served until January 21, 2021, and allege that Plaintiff has never served Dr. Travis in his individual capacity, ECF No. 14-1 at 8–9. On April 26, 2021, Defendants filed the now pending Motion to Dismiss for Lack of Jurisdiction, Failure to State a Claim and Improper Service, ECF No. 14. On June 15, 2021, Plaintiff opposed the Motion to Dismiss, ECF No. 19-2, and on June 29, 2021, Defendants replied, ECF No. 20.

## II.   DISCUSSION

In the instant action, Plaintiff alleges that Defendants BSU, the President of BSU, Dr. Aminta Hawkins Breaux, the former Vice President for Student Affairs, Dr. Artie Travis, the former Chancellor, Dr. Robert Caret, other unknown university employees and officials, and the State of Maryland discriminated against him on the basis of his male sex and sexual orientation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* (Count 1) and on the basis of his disability in violation of the Americans with Disabilities Act, 42 U.S.C § 12101, *et seq.* (Count 2). He also alleges breach of contract (Count 3), breach of the covenant of good faith and fair dealing (Count 4), negligence (Count 5), violations of Maryland Declaration of Rights (Count 6), vicarious liability (Count 7), intentional infliction of emotional distress, (Count 8), fraudulent misrepresentation (Count 9), and retaliation (Count 10), all arising

from Plaintiff's suspension and eventual expulsion from University housing after marijuana was found in his University-owned residence. ECF No. 1.

In response, Defendants first seek the dismissal of Plaintiff's entire Complaint for failure to timely serve it within 90 days under Federal Rule of Civil Procedure 4(m). ECF No. 14-1 at 4. Alternatively, Defendants seek the dismissal of a number of the individual claims, including all claims against the Individual Defendants, due to sovereign immunity and for failure to state a claim upon which relief can be granted. *Id.* Specifically, Defendants seek the dismissal of the following: (1) Counts 1 and 2 against the Individual Defendants "because there is no individual liability under Title IX and the ADA," and because "Plaintiff has failed to state a claim of anti-male gender bias in Count I," (2) the state law causes of action, Counts 3–9, under the doctrine of sovereign immunity and because each claim "fails for reasons specific to each cause of action," and (3) Count 10 for retaliation under Title IX and the ADA because Plaintiff failed to allege that he engaged in a protected activity under either statute prior to suffering an adverse action, *id.* at 4–5.

In opposing Defendants' Motion to Dismiss, Plaintiff concedes: (1) that his breach of contract claims in Counts 3 and 4, against all Defendants, "should not be pursued in this forum based on Sovereign Immunity," and that his vicarious liability claim in Count 7 should also be dismissed against all Defendants, (2) that his negligence claims in Count 5, against the Individual Defendants, "should not be pursued in this forum based on Statutory Immunity," and (3) that "his claim under Count 6 against the Individual Defendants should be dismissed," except as applied to the "unknown and unnamed University Police Officers and other officials who participated in the warrantless search of his dorm room." ECF No. 19-2 at 4–6. Plaintiff

concedes these claims should be dismissed without prejudice. *Id.* at Accordingly, the Court will address each of the remaining issues and claims in turn.

### A.  Service of Process and Rule 4(m)

Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve a defendant within 90 days of filing a complaint. If a plaintiff fails to abide by this requirement, Rule 4(m) provides that, upon a motion by the defendant, or on its own after providing the plaintiff with notice, the Court "must dismiss the action without prejudice against the defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "A plaintiff may escape dismissal for failure to timely serve process only if [ ]he demonstrates 'good cause' for the delay." *Martinez v. United States*, 578 F. App'x 192, 193 (4th Cir. 2014) (quoting Fed. R. Civ. P. 4(m)). Thus, absent a showing of good cause, the complaint must be dismissed; "[t]he Court has no discretion to salvage the action." *Braithwaite v. Johns Hopkins Hosp.*, 160 F.R.D. 75, 77 (D. Md. 1995) (citation omitted); see also *Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir. 1995) ("Rule 4(m) requires that if the complaint is not served within [90] days after it is filed, the complaint must be dismissed absent a showing of good cause.").

Here, Plaintiff filed the Complaint on September 21, 2020. ECF No. 1. On September 29, 2020, a summons was issued, ECF No. 4, which was one day before Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* (IFP) on September 30, 2020, ECF No. 5. The Court granted the IFP Motion on January 14, 2021, ECF No. 6. Under Rule 4(m), Plaintiff had 90 days from the filing of the Complaint, or until December 20, 2020, to serve Defendants, however Defendants state that they were not served until January 21, 2021. ECF No. 20 at 2. Plaintiff argues that "it would have been inappropriate for him to serve the summonses before the [IFP] authorization was granted," and that good cause for his failure to serve Defendants within 90

days exists because the Court had not yet granted his Motion for Leave to Proceed *in forma pauperis* within that time. ECF No. 19-2 at 3. The Court agrees.

The Fourth Circuit has held that when a plaintiff seeks to proceed *in forma pauperis*, the service period is "tolled until the district court [has] screened [the] *in forma pauperis* complaint and authorized service of process . . . [and] an *in forma pauperis* plaintiff should not be penalized for a delay caused by the court's consideration of his complaint. That delay is 'solely within the control of the district court.'" *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010) (quoting *Paulk v. Dep't of Air Force*, 830 F.2d 79, 83 (7th Cir. 1987)). In so holding, the Fourth Circuit further explained that "[b]ecause the delay caused by the court's failure to authorize the issuance and service of process is beyond the control of an *in forma pauperis* plaintiff, such failure constitutes good cause requiring the [90]–day period to be extended." *Id.* "Therefore, notwithstanding the language of Fed. R. Civ. P. 4(m), the [90]–day period did not begin to run immediately." *Craig v. Melwood Horticultural Training Ctr., Inc.*, No. 13-2742-PWG, 2014 WL 3547341, at *2 (D. Md. July 16, 2014).

Thus, although Plaintiff filed the Complaint on September 21, 2020, the Court did not grant the IFP motion and order Plaintiff to "take all necessary steps to effectuate service of the summons and Complaint on all Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure" until January 13, 2021, ECF No. 6 ¶¶ 1–2. Because Plaintiff effectuated service on January 21, 2021, one week after the Court granted his IFP Motion and ordered Plaintiff to effectuate service, the Court finds that service on that date was timely under Federal Rule of Civil Procedure 4(m).[6] Therefore, Plaintiff's Complaint will not be dismissed on this basis.

---

[6] Although Plaintiff is suing Dr. Travis in his personal capacity as well, *see* ECF No. 1 ¶ 4, the Docket does not reflect that Plaintiff has ever served Dr. Travis in his individual capacity, even though Plaintiff filed this lawsuit over sixteen months ago.

**B. Federal Claims - Title IX and ADA Claims (Counts 1, 2 & 10)**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations,

---

 "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006) (citing *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963)). Therefore, service of process on Defendant Dr. Travis in his official capacity is sufficient as he is aware of this lawsuit and has joined in seeking the dismissal of Plaintiff's Complaint through the now pending Motion to Dismiss, *see* ECF No. 14-1.

*see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### 1. Counts 1 and 2

With respect to Plaintiff's federal claims under Title IX and the ADA, Defendants seek (1) the dismissal of Plaintiff's Title IX and the ADA claims as to the Individual Defendants because defendants argue that "neither federal statute provides for individual liability," and (2) the dismissal of Plaintiff's claim that Defendants discriminated against him because of his male sex in violation of Title IX, because he fails to state a claim, ECF No. 14-1 at 29, 27. The Court addresses each argument in turn.

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . [identifying exceptions].

20 U.S.C. § 1681(a). Title IX claims can only be initiated against institutions and programs that receive federal funds, "it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009) (citing *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)); *see also Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 700 (4th Cir. 2018) ("Title IX allows for lawsuits against only educational institutions and programs[.]"). Similarly, "Title II of the ADA . . . [does not] permit individual capacity suits."[7] *Brown v. Dep't of Pub. Safety & Corr. Servs.*,

---

[7] Plaintiff does not specify which title of the ADA forms the basis for his claims, but Defendants, and now the Court, presume it is Title II, which prohibits an individual with a disability from being "excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132, as Plaintiff's claim arises from an incident involving his living situation in University-sponsored housing at BSU. *See* ECF No. 1 ¶¶ 40–48.

383 F. Supp. 3d 519, 552 (D. Md. 2019) (citing *Barnes v. Young*, 565 F. App'x 272 (4th Cir.

2014) ("Title II of the ADA does not provide for individual capacity suits against state

officials.") (internal quotation marks and citations omitted)). Nonetheless, Plaintiff has advanced

claims under both Title IX and the ADA against "all Defendants," including Dr. Travis, in his

personal capacity. ECF No. 1 ¶¶ 32 (Title IX Claim), 41 (ADA Claim), 4. Accordingly,

Plaintiff's Title IX and ADA claims in Counts 1 and 2 against Dr. Travis in his personal capacity

must be dismissed with prejudice.

Defendants also argue that Plaintiff's Title IX and ADA claims against the Individual

Defendants in their official capacities must be dismissed as redundant. ECF No. 14-1 at 30. In

response to this argument, Plaintiff merely notes that he "opposes this argument and defers to the

Court," ECF No. 19-2 at 8. "In failing to respond to this argument[,] Plaintiff concedes the

point." *Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) (citing

*Ferdinand–Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (dismissing

claim where plaintiff failed to respond to defendant's argument)). Even without the concession,

these claims must be dismissed on the merits.

"[E]ven if the individuals were subject to suit in their official capacities, such suits

'generally represent only another way of pleading an action against an entity of which an officer

is an agent[.]'" *Willey v. Bd. of Educ. of St. Mary's Cty.*, No. 20-cv-161-PWG, 2021 WL

3857950, at *6 (D. Md. Aug. 30, 2021) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105

S.Ct. 3099, 87 L.Ed.2d 114 (1985)). "[T]he real party in interest is the entity," and "a plaintiff

seeking to recover . . . in an official-capacity suit must look to the government entity itself."

*Kentucky*, 473 U.S. at 166. Here, Plaintiff has sued the entities, BSU and USM,[8] thus claims

---

[8] Defendants concede that BSU employed Dr. Breaux and Dr. Travis and that the University System of Maryland
employed Dr. Caret. ECF No. 14-1 at 30. Moreover, with respect to Dr. Caret, Defendants note that he is no longer

against Drs. Breaux, Travis, and Caret in their official capacities are redundant. *See Innes v. Bd. of Regents of Univ. Sys. of Maryland*, 29 F. Supp. 3d 566, 575 (D. Md. 2014) ("A lawsuit against President Loh in his official capacity is in essence a lawsuit against the University of Maryland. President Loh and the University of Maryland are one and the same for purposes of this lawsuit . . . Accordingly, President Loh will be dismissed as a defendant."); *see also Munoz v. Balt. Cnty., Md.*, No. 11-cv-02693-RDB, 2012 WL 3038602, at *5 (D. Md. July 25, 2012) (dismissing ADA claim, with prejudice, against individual defendants in their official capacity because [p]laintiff has filed claims against Baltimore County, [thus] his claims against the individual supervisors employed by the County in their official capacities are redundant."). As such, both federal claims, in Counts 1 and 2, under Title IX and the ADA against all of the Individual Defendants shall be dismissed with prejudice. *See Willey*, 2021 WL 3857950, at *6.

Separately, Defendants also seek dismissal of Plaintiff's Title IX claim for discrimination on the basis of sex (male), in Count 1, for failure to state a claim. ECF No. 14-1 at 27. "In the Title IX context, discrimination 'mean[s] treating that individual worse than others who are similarly situated.'" *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 618 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021) (quoting *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020)).

The Fourth Circuit, in *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230 (4th Cir. 2021), recently addressed the issue of Title IX claims in the context of higher-education disciplinary proceedings. In adopting the approach of the Seventh Circuit, the Fourth Circuit in *Sheppard* held that "inherent in this approach is a requirement that a Title IX plaintiff adequately plead causation—that is, a causal link between the student's sex and the university's challenged

---

employed as the USM Chancellor and argue that "Plaintiff has not alleged any facts against him or that he personally had any role in connection with Mr. Carter's disciplinary proceedings at BSU." *Id.* n.9.

disciplinary proceeding." *Id.* at 236. Moreover, the *Sheppard* court cautioned that "[n]ot just any causal link will suffice because, again, the text of Title IX controls[,]" and emphasized that specific language from the text of the statute—"'on the basis of sex'—is significant." *Id.* (quoting 28 U.S.C. § 1681(a)). Ultimately, the court agreed that the "on the basis of sex" language "requires 'but-for' causation in Title IX claims alleging discriminatory school disciplinary proceedings." *Id.* at 237.

"[T]he court is mindful of the difficulties a Title IX plaintiff faces in comparing his disciplinary charge to charges brought against other students. Since student disciplinary proceedings are often private, in many cases the information necessary to determine whether similarly situated students had been treated differently may be solely in the defendant's possession." *Streno v. Shenandoah Univ.*, 278 F. Supp. 3d 924, 931 (W.D. Va. 2017). An informational disadvantage, however, "does not excuse [Plaintiff] from plausibly alleging causation." *Id.* (citation omitted). Plaintiff "need not plead the facts of other student disciplinary proceedings to which he does not have access in order to state a claim. He must, however, provide some justification for believing that the erroneous outcome of his disciplinary proceeding was the result of discrimination in order to 'nudge [his] claims across the line from conceivable to plausible.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That Plaintiff fails to do so here is particularly evident.

Plaintiff alleges that Defendants discriminated against him on the basis of his sex "by treating him differently than they would have treated a similarly situated female," because "[i]f he had been a female who was experiencing a difficult time as a result of a bad relationship, he would have received more support and not have been expelled from campus housing and suspended from college during a period of obvious mental and emotional turmoil as a result of

16

the effects of the bad relationship." ECF No. 1 ¶ 35. Plaintiff fails to provide additional factual allegations about the process for his removal from campus and suspension from school, procedurally or otherwise, to plausibly allege that his male gender was the "but-for" cause of the discrimination he faced in the disciplinary proceedings. And as Defendants note in their Motion, Plaintiff's allegation that his three male roommates were also found with marijuana in their rooms and not removed from campus or suspended, "suggests that male gender was not the reason for his treatment." ECF No. 14-1 at 28.

In opposing the pending Motion with respect to this claim, Plaintiff cites no case law and merely concludes, by referencing two websites regarding gender and domestic violence, that "[i]t is axiomatic that in this society women who are the victims of domestic and relationship issues get more support than males." ECF No. 19-2 at 8. Such conclusory statements, without any supporting factual allegations, are plainly insufficient to nudge his gender discrimination claim "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Accordingly, Plaintiff's claim that Defendants discriminated against him in violation of Title IX because of his gender will be dismissed for failure to state a claim.

**2. Count 10 (Retaliation)**

In Count 10 of the Complaint, Plaintiff alleges that BSU retaliated against him in violation of Title IX and the ADA "for exercising his rights to pursue and appeal the summary expulsion by not allowing him to come back to Student Housing or enroll in school during the investigation of his situation and the University Appellate Process, and not allowing him to return to Student Housing after the investigation . . . and the University Appellate Process was completed." ECF No. 1 ¶ 106.

At the pleading stage, a plaintiff is "required to sufficiently allege two elements to state a Title IX retaliation claim. First, [he] must allege that [he] engaged in protected activity under Title IX, and second, [he] must allege that — as a result of the[] protected activity — [he] suffered an adverse action attributable to the defendant educational institution. *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010)). Similarly, to state a claim for retaliation under the ADA, "a plaintiff must allege (1) that []he has engaged in conduct protected by the ADA; (2) that []he suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) (citing *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001)). Notably, a plaintiff "need not establish that the conduct []he opposed actually constituted an ADA violation[,] . . . [b]ut a complainant must allege the predicate for a reasonable, good faith belief that the behavior she is opposing violates the ADA." *Id.* (internal citations omitted).

Defendants contend that Plaintiff's retaliation claim fails because Plaintiff fails to satisfy the first element of each claim—that he has engaged in conduct protected by Title IX or the ADA—before suffering an alleged adverse action. ECF No. 14-1 at 31–32; ECF No. 20 at 11–12. The Court agrees. Plaintiff has not alleged that he engaged in any conduct protected by Title IX, such as filing a Title IX complaint against BSU or an internal complaint for discrimination based on his male gender and/or sexual orientation before he was disciplined though expulsion from University-housing and suspended from school. *See Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 489 (D. Md. 2015) (finding that plaintiff sufficiently alleged that he engaged in a protected activity when "he filed Title IX complaints against the school for its handling of [an]

investigation and disciplinary action."); *see generally* ECF No. 1. Similarly, Plaintiff has not alleged that he engaged in any conduct protected by the ADA, such as requesting an accommodation, which is a protected activity under the ADA, *see Sillah v. Burwell*, 244 F. Supp. 3d 499, 510 (D. Md. 2017) ("Plaintiff's request for an accommodation is a protected activity under the ADA."), before he received the aforementioned discipline; *see generally* ECF No. 1. In response to Defendants' argument, Plaintiff argues that "Plaintiff clearly alleges that the protected activity he engaged in was being a Gay Male HIV positive student living in University Housing[.]" ECF No. 19-2 at 8. This argument fails.

First, Plaintiff fails to cite any case law in support of his claim that "being a Gay Male HIV positive student living in University Housing" is a protected activity under Title IX or the ADA, and merely suffering from a disability is not in itself a protected activity. *See* ECF No. 19-2 at 8; *see also Marrazzo v. Leavitt*, 719 F. Supp. 2d 1297, 1307 (D. Or. 2010) ("[I]t is clear that 'being disabled' is not a constitutionally protected 'activity' that can form the basis for a retaliation claim."). And second, Plaintiff simply concludes that appealing his expulsion and suspension from school and expulsion from University-housing was a "protected activity," ECF No. 1 ¶ 22; ECF No. 19-2 at 8–9, under Title IX, but does not allege that his appeal challenged the decision based on an alleged Title IX or ADA violation such that the appeal might be protected by those provisions.

For these reasons, Plaintiff fails to state a claim for retaliation under either Title IX or the ADA and his claim must be dismissed.

### C. State Law Claims and Sovereign Immunity (Counts 5–6, 8–9)

Under the Eleventh Amendment to the United States Constitution, a State, including its instrumentalities, such as agents or departments, is immune from suit brought by its citizens or

the citizens of another state in Federal court without the State's consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "This immunity extends to state agencies and state officers acting in their official capacities." *MedSense, LLC v. Univ. Sys. of Maryland*, 420 F. Supp. 3d 382, 391 (D. Md. 2019) (quoting *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996)). "[I]n establishing USM, the Maryland legislature specifically defined it as an 'instrumentality of the State,' governing 'constituent institutions' of higher education." *Id.* (citing Md. Code Ann., Educ. §§ 12-104, 12-101(b)(6)); *see also* Md. Code Ann., Educ. §§ 12-102(a)(1)–(2); *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 265 (4th Cir. 2005) (recognizing USM as an "alter ego of Maryland"). BSU is identified as one of the "constituent institutions" of higher education.[9] Md. Code Ann., Educ. § 12-101(b)(6)(v). Thus, as State entities, Defendants USM and BSU are entitled to sovereign immunity under the Eleventh Amendment.

Defendants contend that all of Plaintiff's state law claims, specifically Counts 3–9, should be dismissed on the basis of sovereign immunity because Plaintiff filed his Complaint in federal, as opposed to Maryland state court. ECF No. 14-1 at 10–11; ECF No. 20 at 3–4. In opposition, Plaintiff concedes that his breach of contract claims in Counts 3 and 4, against all Defendants, "should not be pursued in this forum based on Sovereign Immunity," ECF No. 19-2 at 4–5, but fails to respond to the Defendants' argument that sovereign immunity requires the

---

[9] Referencing the point that USM "is an instrumentality of the State and BSU is one of its constituent institutions," ECF No. 14-1 at 3 n.1, Defendants request that this Court dismiss USM from this action as duplicative because "[t]here are no allegations in the Complaint that relate to conduct by USM or other state officials separate from the University's actions." *Id.* Plaintiff fails to respond to this argument in opposition, *see generally* ECF No. 19-2, and upon review of the Complaint and finding no specific factual allegations as to any conduct by USM itself, Defendant USM is merely duplicative of Defendant BSU and the Court will dismiss Defendant USM from the case.

dismissal of *all* of the remaining state law claims, including negligence (Count 5), claims under the Maryland Declaration of Rights (Count 6), intentional infliction of emotional distress (Count 8), and fraudulent misrepresentation (Count 9).[10]

Nonetheless, each of the aforementioned claims must be dismissed under the doctrine of sovereign immunity. Because Plaintiff brings suit against instrumentalities of the State of Maryland alleging violations of Maryland law, "Plaintiff[] must demonstrate that the State of Maryland clearly and unmistakably has agreed to subject itself to suit in a federal forum." *Bell v. Univ. of Maryland Coll. Park Campus Facilities Mgmt.*, No. 17-cv-1655-PX, 2018 WL 3008325, at *5 (D. Md. June 14, 2018) (citing *Palotai v. Univ. of Md. Coll. Park*, 959 F. Supp. 714, 716 (D. Md. 1997). However, under the Maryland Tort Claims Act ("MTCA"), "Maryland's waiver of sovereign immunity is limited to suits in 'a court of the State.'" *Est. of Leysath v. Maryland*, No. 17-1362-GJH, 2018 WL 1225087, at *4 (D. Md. Mar. 6, 2018) (quoting Md. Code Ann., State Gov't § 12-104(a), citing Md. Code Ann., State Gov't § 12-103(2)). "And the Fourth Circuit has been equally clear—Maryland's waiver of sovereign immunity under the MTCA is not enough to waive immunity guaranteed by the Eleventh Amendment." *Id.* (citing *Weller v. Dept. of Social Services for City of Baltimore*, 901 F.2d 387, 397-98 (4th Cir. 1990)). Because Maryland has not waived its Eleventh Amendment immunity to suit in this Court, Plaintiff's remaining state law claims, specifically Count 5 as to BSU, Count 6 as to the same and the "unknown and unnamed University Police Officers," Count 8 as to BSU and Dr. Travis,[11] and

---

[10] In opposition, Plaintiff also concedes that his vicarious liability claim in Count 7 should also be dismissed against all Defendants, (2) that his negligence claims in Count 5, against the Individual Defendants, "should not be pursued in this form based on Statutory Immunity," and (3) that "his claim under Count 6 against the Individual Defendants should be dismissed," except as applied to the "unknown and unnamed University Police Officers and other officials who participated in the warrantless search of his dorm room." ECF No. 19-2 at 4–6.

[11] Plaintiff's intentional infliction of emotional distress claim against Dr. Travis in his personal capacity must also be dismissed because "under the MTCA, State personnel are immune 'from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross

Count 9 as to BSU must be dismissed. *See Bell*, 2018 WL 3008325, at *5 (dismissing state law tort claims because Maryland has not waived its Eleventh Amendment immunity to suit in federal court); *see also Est. of Leysath*, 2018 WL 1225087, at *4.

In sum, Plaintiff's claims of discrimination on the basis of his male gender in violation of Title IX (Count I), breach of contract (Count III), breach of the covenant of good faith and fair dealing (Count IV), negligence (Count V), violations of the Maryland Declaration of Rights (Count VI), vicarious liability (Count VII), intentional infliction of emotional distress (Count VIII), fraudulent misrepresentation (Count IX), and retaliation (Count X) are dismissed. The only remaining claims, therefore, are: Plaintiff's claim of discrimination on the basis of his sexual orientation in violation of Title IX, against Defendant BSU only (Count I) and his ADA violation claim against BSU only (Count II). Moreover, all Individual Defendants and Defendant State/ USM will be dismissed as well.

---

negligence.'" *Est. of Leysath v. Maryland*, No. 17-cv-1362, 2018 WL 1225087, at *5 (D. Md. Mar. 6, 2018) (quoting Md. Code, Cts. & Jud. Proc. § 5-522(b) (2006)); *see also Lee v. Cline*, 863 A.2d 297, 310 (Md. 2004) (holding that MTCA immunity also encompasses Maryland constitutional torts and intentional torts). Malice under the MTCA is "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will or fraud." *Shoemaker v. Smith*, 725 A.2d 549, 559-60 (Md. 1999) (internal citations omitted), while gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Beall v. Holloway-Johnson*, 130 A.3d 406, 415 (Md. 2016).

First, Plaintiff fails to acknowledge that immunity under the MTCA also encompasses intentional torts, or mention "malice" or "gross negligence at all," *see* ECF No. 19-2. Moreover, his Complaint fails to allege that Dr. Travis, acting within the scope of his duty as Vice President for Student Affairs at BSU, crossed either line with respect to Plaintiff as Plaintiff merely concludes, without more, that Dr. Travis was "actively and intentionally and with full knowledge of the fact that Mr. Carter was Gay and HIV positive, engaging in actions that were meant to and did in fact cause damage, pain and suffering, and emotional distress to Mr. Carter," ECF No 1. ¶ 85. As such, the IIED claim against Dr. Travis in his personal capacity must likewise be dismissed. *see Est. of Leysath*, 2018 WL 1225087, at *5.

**III.    CONCLUSION**

For the foregoing reasons, For the following reasons, Defendant's Motion to Dismiss, ECF No. 14, is granted. A separate Order shall issue.

Date: <u>March 9, 2022</u>                              <u>    /s/                                    </u>
                                                                    GEORGE J. HAZEL
                                                                    United States District Judge